# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| TAMIE QUINN, | |
| Plaintiff, | **CV-23-42-BU-BMM** |
| vs. | **ORDER** |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, and DOES 1-5, | |
| Defendants. | |

## BACKGROUND

Tamie Quinn ("Quinn") worked at the Anaconda, Montana branch of Wells Fargo Bank, N.A., ("Wells Fargo") as a Regional Banking Branch Manager beginning in April 2018. (Doc. 18 at 8.) Another employee at the Anaconda Wells Fargo branch, Jenna Anderson, possessed a weapon on her person and attempted to enter the branch on April 17, 2020. (Doc. 13-3 at 2.) A security officer employed by Wells Fargo detained Anderson before Anderson entered the premises. (Doc. 13-3 at 2, 3, 7.) Wells Fargo terminated Anderson's employment on April 20, 2020. (Doc. 8 at 1.)

The Anaconda branch of Wells Fargo closed in February 2021. (Doc. 18 at 8.) Wells Fargo presented an Agreement and Release of Claims ("Agreement") to Quinn and other employees at the Anaconda branch in March 2021. (Doc. 18 at 2.) The Agreement offered a continuation of Quinn's salary benefits for up to a year in exchange for Quinn executing a release of claims against Wells Fargo. (*Id*.) Quinn signed the agreement knowingly, willingly, and voluntarily on April 18, 2021. (Doc. 18 at 2, 3.) The Agreement became final after a seven-day revocation period passed without Quinn exercising her option to revoke the Agreement. (Doc. 18 at 4-5.)

Montana law governs the Agreement. (Doc. 18 at 2-3.) The Agreement states that states Quinn "release[s] the Company from all claims, liabilities, demands, and causes of action, known or unknown, likely or unlikely, which [Quinn] may have or claim to have against the Company, as a result of [her] employment with or separation from employment." (Doc. 13-2 at 3); *see* (Doc. 18 at 3.) The Agreement provides that "[t]his includes, but is not limited to, [. . .] any tort of any nature[.]" (Doc. 13-2 at 3); *see* (Doc. 18 at 3.) Quinn avers that she "did not understand or interpret the Agreement and Release of Claims to include any of the claims she possessed against Wells Fargo that resulted from the April 17, 2020 event at the Anaconda, MT branch." (Doc. 18-1 at 2.)

2

Wells Fargo paid Quinn salary benefits in accord with the executed Agreement. (Doc. 18 at 5.) Quinn's employment with Wells Fargo terminated on May 24, 2021, after the Agreement's contemplated term of salaried leave ended. *See* (Doc. 13-2 at 1); *see also* (Doc. 18-1 at 2). Quinn brings six claims arising from the April 17, 2020 incident and Wells Fargo's role in it: negligence ("Count I"), negligent hiring ("Count II"), negligent retention ("Count III"), negligent supervision of Jenna Anderson ("Count IV"), negligent infliction of emotional distress ("Count V"), and negligence per se ("Count VI"). (Doc. 1-2.) Wells Fargo moves for summary judgment on all Quinn's claims. (Doc. 11); *see* (Doc. 12.)

## LEGAL STANDARD

Summary judgment must issue when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## DISCUSSION

The key language of the Agreement's release of claims term proves immensely broad:

> Release of claims. In consideration for the receipt of the terms and benefits described in this Agreement to which you are not otherwise entitled, you hereby release the Company from *all claims, liabilities, demands, and causes of action, known or unknown, likely or unlikely*, which you may have or claim to have against the Company, as a result of your employment with or separation from employment. This includes, but is not limited to, claims for wrongful termination, constructive discharge, termination in violation of public policy, claims

3

for compensation or any other monies allegedly due to you from the Company, claims for additional severance pay or benefits, claims for breach of express or implied contract, *any tort of any nature*, claims for discrimination or harassment based on age, sex, race, religion, pregnancy, marital status, national origin, sexual orientation, or disability arising under federal, state, local, or common law, including but not limited to Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act ("ADEA"), as amended, the Civil Rights Act of 1991, the Older Workers Benefit Protection Act, the Worker Adjustment and Retraining Notification Act ("WARN"), the Americans with Disabilities Act, the Family and Medical Leave Act, the Equal Pay Act, or all state and local human or civil rights statutes.

(Doc. 13-2 at 3) (emphasis added).

The release specifies a host of labor and employment related statutes to which the Agreement applies, including Title VII of the Civil Rights Act of 1964, the ADEA, the Civil Rights Act of 1991, the Older Workers Benefit Protection Act, the WARN, the Americans with Disabilities Act, the Family and Medical Leave Act, and the Equal Pay Act. (*Id.*) By its terms, however, the Agreement does not limit itself to the specified claims. The release explicitly applies not only to "claims for breach of express or implied contract [and] any tort of any nature," but also to "claims for compensation *or any other monies* allegedly due to you from the Company," and "claims for discrimination or harassment [. . .] arising under federal, state, local, or common law, *including but not limited to* [certain employment-related statutes.]" *Id*.

4

The Agreement does not explicitly or implicitly limit the scope of the release to typical employment law claims catalogued in the Agreement. Each of Quinn's six potential claims falls within the explicitly included category of "any tort of any nature." *Id*. This motion boils down to one finite question: whether Quinn possesses each of her six alleged claims "as a result of [her] employment with or separation from employment" with Wells Fargo.

In *Somersille v. Columbia Falls Aluminum Co.*, 841 P.2d 484, 485 (Mont. 1992), the plaintiff sued his former employer for wrongful discharge and common law tort claims. The plaintiff had negotiated and signed a termination agreement with the former employer before filing suit. *Id*. The termination agreement included a "waiver of claims" which read "any and all claims, known and unknown," and "other liabilities relating to [plaintiff's] employment relationship with the Company." *Id*. at 485. The former employer paid the plaintiff consideration in the form of continued salary payments and the provision of other benefits of value. *Id*.

The Montana Supreme Court affirmed summary judgment in favor of the former employer, in relevant part, on the basis that "plaintiff voluntarily relinquished all potential claims against [the former employer] and was precluded from bringing [the] action." *Id*. at 487. The Montana Supreme Court adopted the reasoning of the Montana state district court. The plaintiff had received over

$100,000 in compensation and benefits to "waive and relinquish any and *all*
claims" against the former employer. *Id.* at 489. The plaintiff further agreed to
"release and forever discharge" the employer "from any and all actions, suits . . .
and other liabilities relating to his employment relationship." *Id.* The plaintiff's
voluntary relinquishment of all potential claims against the employer precluded
him from pursuing the action. *Id*.

The Montana Supreme Court did allow one of the former employee's claims
to go forward. *Id.* at 490. The parties included a clause in the termination
agreement specifying the payment of a profit-sharing distribution to be made at a
later date as part of the former employee's severance pay. *Id*. at 485. The
termination agreement failed to specify the precise amount and timing of the
promised distribution. *Id*. at 485, 490. The Montana Supreme Court determined
that the former employee raised an issue of fact as to the eventual calculation of the
distribution and allowed a claim regarding the distribution to go forward. *Id*. at
490. Quinn and Wells Fargo neither bargained for nor agreed to any similar
exchange of an amount to be later determined at a time to be later determined. The
survival of the profit-sharing claim in *Somersille* does not prove applicable to the
case at bar.

The Agreement in this case includes narrower language than the waiver of
"all claims" in *Somersille* but appears substantially like the second release in the

*Somersille* agreement "from any and all actions [. . .] relating to Somersille's

employment relationship with the Company." *Id*. at 485. Quinn received salary

benefits from Wells Fargo in consideration for her release of "all claims [. . .]

which [she] may have or claim to have against the Company, as a result of [her]

employment with or separation from employment[.]" (Doc. 13-2 at 3.) The Court

finds no meaningful difference in such comparable contexts between the limiting

phrases "relating to [plaintiff's] employment relationship with the [defendant]" and

"as a result of [plaintiff's] employment with or separation from employment."

*Somersille* affirmed summary judgment against the plaintiff's common law tort

claims. *Somersille*, 841 P.2d at 490. Quinn's tort claims likewise cannot survive

summary judgment. *See also Rich v. Ellingson*, 174 P.3d 491 (affirming summary

judgment against plaintiff's subsequent malpractice claim where plaintiff received

consideration for a release of the defendant attorney from "all actions [. . .] arising

out of or related to the described casualty").

The Court cautions that the result in this case depends in part upon the

procedural fairness apparent from the facts. Wells Fargo provided Quinn with 45

days to decide whether to sign the Agreement. (Doc. 13-2 at 2.) Wells Fargo

"encourage[d]" Quinn to "consult with legal counsel[.]" (*Id*.) Wells Fargo further

gave Quinn seven days from the date of signing to renege on her consent and tear

up the contract. (*Id*.) The contracting process in this case afforded Quinn a total of

7

fifty-two days, approximately seven and a half weeks, to consult an attorney or seek out other professional advice. The Court notes that the plaintiff in *Somersille* likewise enjoyed procedural fairness as he successfully negotiated for changes to the termination agreement. 841 P.2d at 484. A case in which fewer indicia of procedural fairness existed in the record might not warrant the same conclusion as here. The Court further notes that Quinn knew of the alleged tortious conduct of Wells Fargo since April 17, 2020, almost exactly one year *before* Quinn signed the Agreement. A case relating to a latent injury or based on conduct that remained unknown to the plaintiff at the time of contracting might not warrant the same conclusion as in this case. *See Somersille* at 490.

## ORDER

Accordingly, **IT IS ORDERED** that:

Wells Fargo's Motion for Summary Judgment (Doc. 11) is **GRANTED**.

**DATED** this 20th day of December, 2023.

_____

Brian Morris, Chief District Judge
United States District Court

8